UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:18-cv-00152-FDW

| CRYSTAL B. JOHNSON, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
| | ) ORDER |
| ANDREW SAUL, | ) |
| Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 11). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for supplemental security income under 42 U.S.C. § 405(g).[2] Plaintiff raises this appeal on three assignments of error. Plaintiff fails on two arguments (that the ALJ failed to state good reasons for the weight assigned to Plaintiff's medical opinions, and that the ALJ failed to explain her reasoning for finding Plaintiff can concentrate for two hours), but succeeds on the argument that the ALJ relied on testimony from the Vocational Expert without identifying and assessing the apparent conflict between Plaintiff's need for "short, simple instructions" and a job's requirement that Plaintiff follow "detailed but uninvolved" instructions. For the reasons which follow, Plaintiff's motion

---

[1] Although the case was originally filed against Nancy Berryhill, then-Acting Commissioner of Social Security, the Court substitutes in her place Andrew Saul, who is now the Commissioner of Social Security, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

[2] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

1

(Doc. No. 9) is GRANTED, Defendant's motion (Doc. No. 11) is DENIED, and the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## I. BACKGROUND

Plaintiff filed applications for Title XVI and Title II benefits on January 5th, 2015, alleging disability since June 1, 2013. (Tr. 13). Plaintiff's application was initially denied on April 8, 2015, and on reconsideration on July 15, 2015. (Tr. 13). On August 3, 2015, Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which was held on May 16, 2017, in Charlotte, North Carolina. (Tr. 13). After the hearing, the ALJ denied Plaintiff's application in a written decision dated November 9, 2017. (Tr. 23).

To reach this decision, the ALJ followed the five-step evaluation process for disability claims under the Social Security Act ("the Act"). (Tr. 14-15); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ determined that Plaintiff has not been engaged in substantial gainful activity since the alleged onset of the disability. (Tr. 15). In the second step, the ALJ determined that Plaintiff has several severe impairments under 20 C.F.R. § 416.920(c). (Tr. 15); 20 C.F.R. § 416.920(c). Plaintiff's impairments include morbid obesity, hypertension, major depression, anxiety, hypothyroidism, diabetes mellitus, and coronary artery disease. (Tr. 15). At step three, the ALJ found that Plaintiff's impairments, alone or together, do not met or medically equal the severity of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (Tr. 15-17).

The ALJ then determined Plaintiff's residual functional capacity ("RFC") was for "light work," with the following additional restrictions:

> [Plaintiff] can only occasionally engage in postural maneuvering and she should avoid workplace hazards. She must be allowed to alternate between sitting and

> standing up to two times each hour. She can follow short, simple instructions and perform routine tasks, but she can engage in no work requiring a production rate or demand pace. She is able to sustain attention and concentration for two hours at a time. She should avoid work environments involving crisis situations, complex decision making or constant changes in a routine setting. She can frequently but not continuously interact with coworkers and supervisors and have only occasional public contact or interactions.

(Tr. 17). At step four, after evaluating these restrictions on her capabilities, the ALJ found that Plaintiff is no longer able to continue in her present occupation of daycare teacher. (Tr. 21-22). At the final step, the ALJ combined Plaintiff's age, education, work experience, RFC, and the testimony of the Vocational Expert ("VE") to determine that Plaintiff is capable of "making a successful adjustment to other work that exists in significant numbers in the national economy," such as electronics worker, laundry folder, or inspector-hand packager. (Tr. 22-23). Accordingly, the ALJ decided Plaintiff was not disabled under the Act. (Tr. 23).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. Id.; Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight

3

of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden

4

shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original).

In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

5

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635] (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862.

If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff alleges the ALJ erred in three ways: (1) the ALJ erred by relying on testimony of the VE which conflicts with the descriptions in the Dictionary of Occupational Titles ("DOT") without obtaining an explanation from the VE; (2) the ALJ erred by failing to state good reasons for the weight given to the medical opinions presented; and (3) the ALJ erred by failing to sufficiently explain her reasoning for finding Plaintiff is able to concentrate on tasks for two hours at a time. (Doc. No 10, p. 6-7). The Court addresses each argument in turn.

**A. VE Testimony conflicts with DOT descriptions**

Plaintiff's first assignment of error is the ALJ relied on testimony from the VE that conflicts with job descriptions found within the DOT without first obtaining an explanation from the VE. Id. at 6. Specifically, Plaintiff alleges that the VE identified jobs that require a DOT reasoning level of 2 and which require a "production rate or demand pace". Id. at 9, 11-12. According to

6

the DOT, level 2 reasoning requires a worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, [and] deal with problems involving a few concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702 (4th ed. 1991). Plaintiff alleges this requirement conflicts with her RFC requiring only "short, simple instructions" and that the job descriptions conflict with her RFC requiring no "production rate or demand pace." (Tr. 17), (Doc. No. 10, p. 9, 11-12).

The Commissioner argues that there is no conflict between the VE's testimony and the DOT jobs because the ALJ specifically asked the VE about the "production rate and demand pace" requirement, and "there is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions." (Doc. No. 11-1, p. 22-23). The Commissioner also relies on the fact that Plaintiff's attorney did not challenge the consistency of the VE's testimony and the DOT descriptions. Id. at 19-20.

### i. Short, Simple Instructions

A plaintiff's attorney is not required to identify conflicts between the VE testimony and the DOT. Pearson, 810 F. 3d at 210. Rather, the ALJ must independently identify apparent conflicts between the VE's testimony and the DOT, and merely asking the VE if there are any conflicts is insufficient. Id. at 209-10. An apparent conflict occurs when the RFC and the DOT definition appear to be in conflict, even though the VE may be able to show that no conflict actually exists. Id. An apparent conflict is one that is less than "obvious," but can still be identified by "compar[ing] the express language of the [DOT] and the [VE]'s testimony." Id. While it is entirely possible that the jobs presented by the VE could have instructions which are both detailed and simple, and which Plaintiff could follow, it is also possible that "detailed but uninvolved"

7

instructions may be more than the "short, simple instructions" that Plaintiff requires. Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019).

In Thomas, the Fourth Circuit determined there is an apparent conflict between an RFC requiring "short, simple instructions" and a DOT reasoning level of 2, which requires following "detailed but uninvolved" instructions. Id. In Thomas, there were two separate reversible errors. Id. at 311. The first error was the ALJ incorrectly identified the claimant's RFC due to four flaws: (1) the ALJ did not draw explicit conclusions about the claimant's mental limitations, (2) the ALJ did not sufficiently explain the weight of the claimant's medical opinion, (3) the ALJ decided the claimant's RFC, and concluded the claimant's limitations were consistent with the RFC, and (4) the ALJ failed to explain what a "production rate or demand pace" entails. Id. at 312. These four flaws together made it impossible to review the ALJ's decision and caused remand. Id.

The second error in Thomas, relevant here, was in failing to resolve a conflict between the VE's suggested jobs, which required a DOT reasoning level of 2, and the claimant's RFC requirement of following only "short, simple instructions." Id. at 313. Although there is "no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work," Davis v. Berryhill, No. 5:16-CV-00016-MR, 2017 WL 4248811, at *3 (W.D.N.C. Sept 25, 2017) (citing, *inter alia*, Martin v Colvin, No. 1:14-CV-234, 2015 WL 9094738, at *5 (W.D.N.C. Dec 16, 2015)), there is still the possibility a job with a DOT reasoning level of 2 or higher requires more than following "short, simple instructions," and the ALJ is required to investigate this apparent conflict. Thomas, 916 F.3d at 313.

In this case, the ALJ asked the VE about jobs that Plaintiff could perform with her RFC, and with her restrictions on standing, sitting, and concentration, and pace. (Tr. 17, 42). The ALJ

8

did not ask any questions to resolve specific conflicts between jobs and the RFC, however, such as all three jobs recommended by the VE requiring the worker to follow "detailed but uninvolved" instructions, and Plaintiff's RFC requirement of "short, simple instructions," as required under Thomas. 916 F.3d at 313.  The Commissioner's argument that Thomas only applies when there are multiple missteps working in concert is incorrect – the multiple missteps mentioned in Thomas are related to his RFC evaluation.  Id. at 312.  The error of failing to properly identify and resolve conflicts between the DOT and the VE's testimony constitutes a separate reversible error.  Id. at 313.

It is entirely possible that the electronics worker, laundry folder, and inspector-hand packager jobs identified by the VE are jobs with both detailed and simple instructions.  However, without identifying this apparent conflict between the job description and the Plaintiff's RFC, it is impossible to know whether they do. The Court is not attempting to answer that question here.  That is for the ALJ to answer on remand.

  **ii. Production Rate or Demand Pace**

In addition to failing to question the VE about the instruction requirements, Plaintiff also alleges the ALJ did not attempt to resolve conflicts relating to Plaintiff's RFC requirement of no "production rate or demand pace."  (Doc. 10, p. 11-12).  Contrary to Plaintiff's position, however, not every job involved in the production of a good creates an apparent conflict with an inability to work at a "production rate or demand pace"; at most, only job descriptions which specify a need to place materials on (or remove material from) a conveyor belt would create this apparent conflict.  Martinez v. Berryhill, No. 3:17-CV-186-MOC, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018).

In Martinez, the claimant objected to the VE's recommendation of three jobs – dowel inspector, lens inserter, and getterer – claiming all three require a "production rate or demand pace." Id. The claimant's argument was that a dowel inspector is part of the production of dowels, a lens inserter must place frames onto a conveyor belt (and is therefore part of an assembly line), and a getterer is involved in the production of lamps, and since all three jobs are involved in the production of goods, they must require a "production rate or demand pace." Id. The court agreed with plaintiff's argument regarding lens inserters but not the two other jobs, basing its decision on the distinction between being involved in production and working at a "production rate." Id. Jobs which require a worker to place material on a conveyor belt have "an apparent conflict, albeit a tenuous one" with an RFC requiring no "production pace or demand rate" work. Id. When the VE answers the ALJ's question with a job that appears to require a "production rate or demand pace" despite the ALJ's specifications, the ALJ is required to resolve such conflicts. See Pearson, 810 F. 3d 204, 207-08 (4th Cir. 2015).

There is no such conflict here, however. While Plaintiff asserts that the laundry folder job includes mention of both placing and removing bundles from conveyors, (Doc. No. 10, p. 11), the description of the job found in the DOT makes no mention of conveyors. DOT 369.687-018, 1991 WL 673072 (4th ed. 1991). Additionally, when first asking the VE for potential jobs that Plaintiff could work, the ALJ specifically mentioned the need for a lack of "production rate or demand pace" in the job. (Tr. 42). Finally, neither the electronics worker or inspector-hand packer job descriptions mention a conveyor, nor does Plaintiff assert that they do. See generally (Doc. No. 10). Therefore, even if the laundry folder job did include the need to work at a "production pace

or demand pace," there would still be two jobs remaining in significant numbers in the national economy for Plaintiff to work.

Because there was nothing in the DOT descriptions of the jobs recommended by the VE which would appear to require a "production rate or demand pace," the Court finds no error on this issue.

### B. Failure to explain weight of medical opinions

Plaintiff's second assignment of error is that the ALJ failed to adequately explain her reasoning for the weight given to multiple medical experts. (Doc. No. 10, p. 6). Plaintiff alleges that the ALJ rejected the evidence presented by Dr. Rudy Santoso (Plaintiff's treating psychiatrist), Dr. Shirley Huffman, (a psychologist), Dr. Aregai Girmay, and Dr. Gordon Cappelletty, (also a psychologist), for being "vague" and inconsistent with the evidence, despite all of the doctors producing similar medical evaluations complete with both specific medical issues and complications from those issues. Id. at 13-14, 19-20. Further, Plaintiff alleges the ALJ failed to give any weight to the opinion of the Agency's psychological consultant, W. Albertson, Ed.D. Id. at 20. The Commissioner argues the ALJ gave appropriate weight to every medical opinion and the medical opinions were given little weight based on substantial evidence. (Doc. No. 11-1, p. 11).

#### i. Plaintiff's Doctor's Opinions

In general, a treating physician's opinion is to be given great weight, or even controlling weight, if consistent with the other evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ does have the option to give a medical opinion lower weight, however, if it is not consistent with other evidence, is conclusory, or is from a doctor who has only a short history with the patent.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ appropriately assigned weight to all of Plaintiff's medical opinions. While the opinions are consistent with each other, they are not consistent with the other evidence presented, such as Plaintiff's history of working with her impairments, her ability to drive to Statesville almost every day, or her ability to generally run her life: Plaintiff is able to visit the doctor, go shopping, cook simple meals, and help to take care of her grandson. (Tr. 19-20).

The ALJ based the decision to give little weight to these medical opinions on the evidence relating to Plaintiff's daily life, as well as the fact that all but one doctor had only seen Plaintiff on one occasion. Further, contrary to Plaintiff's assertion, there is no requirement under 20 C.F.R. § 404.1527(4) or § 416.927(4) that the ALJ specifically recognize consistency between two medical opinions. 20 C.F.R. §§ 404.1527(4), 416.927(4). Those regulations simply list factors that the ALJ is to use in determining the weight to be given to medical opinions. For these reasons, the Court finds that there is sufficient evidence to uphold the ALJ's decision to give the medical opinions little weight.

  **ii. Opinion of the Agency Psychologist**

The ALJ is required to evaluate and give some weigh to every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). However, Plaintiff must also show that remand due to an error by the ALJ would result in a finding of disability. Dover v. Astrue, No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012) ("even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result."). Dover is especially relevant here, as the claimant alleged the ALJ erred by failing to state the weight given to the opinion of one of the claimant's psychologists. Id. The court agreed that this was in error, but

declined to remand, as the opinion mirrored that of other opinions adopted by the ALJ and would therefore not change the claimant's RFC. Id.

Here, the ALJ's decision neither directly mentions nor gives any weight to the opinion of a psychologist, W. Albertson, Ed.D., who examined Plaintiff and submitted a medical opinion of Plaintiff's alleged disability. (Tr. 86-91, 101-04). The fact that the psychologist in this case is from a State agency, while in Dover the psychologist was one of the claimant's medical professionals, is irrelevant. The ALJ does assign "some weight to the assessment of the State agency medical consultants," however the ALJ then only discusses the physical limitations discussed by the medical consultants, not the mental limitations stated by Dr. Albertson. (Tr. 21).

While Plaintiff makes the conclusory statement "[h]armful error resulted from this failure," (Doc. No. 10, p. 20), she fails to explain how this error caused any harm. While it is clearly an error for an ALJ to fail to assign weight or discuss a medical opinion, Dr. Albertson's opinion finds Plaintiff to be more functional than Plaintiff's own doctors and even criticizes two of Plaintiff's doctor's opinions. (Tr 86-89, 101-04). Dr. Albertson found Plaintiff to be only "moderately limited" in her ability to concentrate for extended periods, and "not significantly limited" in her ability to complete a normal workday and workweek. (Tr. 87). This would appear to be inclusive of the limitations found by the ALJ when deciding Plaintiff's RFC: Plaintiff can follow "short, simple instructions," is able to concentrate for only a few hours, and is able to complete a normal workday and workweek. (Tr. 17). Because the Agency's psychologist's opinion would not reduce Plaintiff's RFC even if given the highest weight, the Court finds this to be a harmless error.

**C. Failure to explain how Plaintiff can concentrate on a task for two hours at a time.**

Plaintiff's final assignment of error is the ALJ erred in determining her RFC by finding that Plaintiff can concentrate on a task for up to two hours, because the ALJ did not weigh every medical opinion on record and provided no explanation as to how this conclusion was reached. (Doc. No. 10, p. 23-24). The Commissioner argues the ALJ properly explained her reasoning, and that it was based on evidence of Plaintiff's daily life activities. (Doc. No. 11-1, p. 4, 6-7).

Plaintiff bases her argument on Monroe v. Colvin, and the decision by the Fourth Circuit to remand due to an error in determining the claimant's RFC. 826 F.3d 176; (Doc. No. 10 p. 24). In Monroe, the claimant alleged that the ALJ erred in determining his RFC because the ALJ did not use a function-by-function analysis. Monroe, 826 F.3d at 187. Instead, the ALJ assigned the claimant an RFC of light work (with exceptions) and found that the claimant's alleged symptoms (sleep apnea and narcolepsy, as well as possible seizures) were "not credible to the extent that they are inconsistent with the RFC the ALJ identified." Id. at 188 (quotations omitted). Because the ALJ had found the claimant's symptoms not credible due to the already-decided RFC, rather than basing the decision on actual evidence, the case was remanded due to inadequacies in the analysis. Id. However, even in cases where an ALJ does not follow a function-by-function analysis exactly, or begins the discussion by stating the determined RFC, it does not require a per se remand. Mascio, 780 F.3d at 636.

In this case, the ALJ did go through a function-by-function analysis, where the ALJ examined the medical opinions and Plaintiff's testimony regarding her own medical conditions, mental capabilities, and Plaintiff's ability to continue normal activities in her daily life. (Tr. 17-21). While it is true that the ALJ mentions Plaintiff's RFC first (in the heading of the section), the remainder of the section is dedicated to explaining this determination by citing to the evidence the

ALJ had analyzed. Id. This is distinguishable from both Monroe and Mascio, where the ALJ rejected evidence of disability because it was not consistent with the RFC which had already been chosen. Monroe, 826 F.3d at 188; Mascio, 780 F.3d at 639. In this case, there is evidence that could support either determination. However, as discussed above, courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence: "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653. Therefore, the Court defers to the decision of the ALJ which is based on substantial evidence and finds no error on this issue.

## IV. CONCLUSION

For the forgoing reasons, Plaintiff's fails on two arguments but succeeds in her argument that the ALJ erred by not recognizing the apparent conflict between Plaintiff's RFC and the job descriptions found within the DOT. Accordingly, Plaintiff's motion (Doc. No. 9) is GRANTED, Defendant's motion (Doc. No. 11) is DENIED, and the Commissioner's decision is REVERSED and REMANDED for further proceedings.[3]

Signed: March 19, 2020

Frank D. Whitney
Chief United States District Judge

---

[3] Under 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . ." The Court lacks the power to vacate the Commissioner's decision. Id. Accordingly, the Court reverses the Commissioner's decision and remands for further proceedings consistent with this order.